UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED
02 JUL 31 PM 5:42
U.S. D...    ...URT
N.D. ...   ...MA

| | | |
|---|---|---|
| CITIFINANCIAL CORPORATION, LLC, f/k/a CITIFINANCIAL, INC., | ] ] ] | |
| Plaintiff(s), | ] ] | CV-02-N-1187-E |
| vs. | ] ] | |
| MICHAEL SHELL, | ] ] | ENTERED |
| Defendant(s). | ] | AUG 0 1 2002 |

**Memorandum of Opinion**

**I.   Introduction**

Currently before the court is a petition to compel arbitration, brought pursuant to Section 4 of the Federal Arbitration Act. (Doc. # 1; *see also* 9 U.S.C. § 4). The plaintiff, CitiFinancial Corporation, LLC (hereinafter "CitiFinancial"), contends that the above-styled action has become necessary because the defendant, Michael Shell, is proceeding with claims against it in the Circuit Court of Etowah County, Alabama, that must be arbitrated pursuant to an arbitration agreement entered into with CitiFinancial's predecessor, and that Mr. Shell refuses to arbitrate those claims. Mr. Shell offers several contentions in opposition: (1) the court is without jurisdiction over this action; (2) the plaintiff is not a proper party to this action; (3) the arbitration agreement made subject of this action was obtained fraudulently and is thus unenforceable; and (4) the plaintiff has waived its right to pursue arbitration by filing suit against him on November 13, 2001. The issues have been briefed by the parties, and the court finds the matter now ripe for decision. Upon due consideration, the court finds the petition due to be granted.

## II. Background

On or about July 16, 1998, the defendant Mr. Shell purchased a house in Gadsden, Alabama. The purchase was financed by Associates Financial Services Company of Alabama (hereinafter "AFSCA"), and AFSCA recorded a mortgage granted to it by Mr. Shell. At the time of the transaction, Mr. Shell allegedly entered into an arbitration agreement with AFSCA. The parties have not offered any evidence of this transaction; however the parties have submitted a subsequent arbitration agreement Mr. Shell and AFSCA entered into on April 30, 1999, when Mr. Shell secured a second loan from First Family Financial Services, Inc. (hereinafter "FFFS"), an affiliate of AFSCA. Pursuant to the terms of the April 30 loan, Mr. Shell agreed to, *inter alia*, arbitrate any and all claims or disputes arising out of, in connection with, or related to that loan, as well as any previous loan from or assigned to FFFS, and any claim or dispute between himself and any of FFFS's employees, agents, or affiliates, such as parent corporations, sister corporations, and subsidiary corporations. (*See* Doc. # 1, pp. 4-5 & Ex. 1).

On April 19, 2001, AFSCA filed a foreclosure deed in the Probate Court of Etowah County, Alabama, for the Gadsden house purchased by Mr. Shell. (*See* Doc. # 5, Ex. E). On November 13, 2001, AFSCA commenced an action in the Circuit Court of Etowah County to recover possession of this property, pursuant to Alabama Code § 6-6-280. (*See id.*, Ex. F). Mr. Shell formally answered the complaint on January 19, 2002, and counterclaimed against AFSCA for wrongful foreclosure and negligent and/or wanton foreclosure. (*See id.*, Ex. G). On March 15, 2002, the named plaintiff in this action, CitiFinancial, appeared in the Etowah County action, claimed to be the proper plaintiff – being formerly known as

CitiFinancial, Inc., formerly known as AFSCA – and moved to voluntarily dismiss its state court action without prejudice. (*See id.*, Ex. I). The Circuit Court granted that motion on April 2, 2002, but did not dismiss the counter-claims of Mr. Shell.

A final note on the evolution of the plaintiff in this action is warranted. On September 28, 2001, AFSCA merged into CitiFinancial Corporation 216, LLC. (*See id.*, Ex. J). The post-merger corporation incorporated under the laws of the State of Delaware, and maintained a principal place of business in Alabama. (*See id.*). On March 5, 2002, this corporation merged into the plaintiff in this action, CitiFinancial Corporation, LLC. (See Doc. # 6, Ex. A). CitiFinancial also incorporated under Delaware law, but instead of maintaining a principal place of business in Alabama, CitiFinancial maintained a principal place of business in Maryland. Additionally, CitiFinancial registered to do business in Alabama on March 13, 2002.

### III. Basis for the Action

The Federal Arbitration Act (hereinafter "FAA") renders any written arbitration "provision in any . . . contract evidencing a transaction involving commerce . . . valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. As the United States Supreme Court has explained, "Section 2 is the primary substantive provision of the Act . . . [;] a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary . . . [, that creates] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 430 U.S. 1, 24

(1983); *see also Harris v. Palm Harbor Homes, Inc.*, 198 F. Supp. 2d 1303, 1305 (M.D. Ala. 2002); *Bullock v. United Benefit Ins. Co.*, 165 F. Supp. 2d 1259, 1260-61 (M.D. Ala. 2001). Section 3 provides for the stay of proceedings in federal district courts when an issue in the proceedings is referable to arbitration. *See* 9 U.S.C. § 3. Section 4 – the section under which the plaintiff currently proceeds – provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. *See* 9 U.S.C. § 4; *see also Harris, supra; Bullock, supra; see generally* Doc. # 1.

"Federal courts and state courts have concurrent jurisdiction to enforce the FAA. As courts have long held, however, the FAA does not confer subject matter jurisdiction on federal courts. Instead, federal courts must have an independent jurisdictional basis to entertain cases arising under the FAA." *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997) (citing Moses H. Cone, 460 U.S. at 25); *see also id.* at 1469-70 ("even though several sections of the FAA authorize particular actions by the United States district court . . . courts have not construed these references to the United States district court as intending to confer federal court jurisdiction, but rather as specifying the powers possessed by the court in a case that is properly before it." (citations and quotations omitted)); *Johns v. Taramita, Inc.*, 132 F. Supp. 2d 1021, 1024 (S.D. Fla. 2001).

### IV. Discussion

#### A. Subject Matter Jurisdiction

Mr. Shell first challenges the petition of the plaintiff on the grounds that this court lacks subject matter jurisdiction. As noted *supra*, the FAA does not provide an independent basis for such jurisdiction. Mr. Shell maintains that 28 U.S.C. § 1332 cannot be used as a

4

jurisdictional hook here, because although the amount in controversy exceeds the jurisdictional threshold of $75,000, the parties are not diverse. *See* 28 U.S.C. § 1332(a). According to Mr. Shell, diversity is absent because CitiFinancial is a citizen of Alabama. CitiFinancial is a citizen of Alabama, he continues, because AFSCA and CitiFinancial are one and the same (by virtue of their merger), and AFSCA was a citizen of Alabama. (*See* Doc. # 5, pp. 4-5). The defendant offers the court no binding or persuasive authority in support of this theory, and in the absence of such authority, the court rejects this argument *in toto*.

"Citizenship of a merged corporation is determined by the principal place of business of the survivor corporation." *TKI, Inc. v. Nichols Research Corp.*, 191 F. Supp. 2d 1307, 1317 (M.D. Ala. 2002); *see also Hoefferle Truck Sales, Inc. v. Divco-Wayne Corp.*, 523 F.2d 543, 548-49 (7th Cir. 1975) ("[T]he proposition that separate corporations lose their separate identity after merger is too evident for much discussion. . . . [A]fter a foreign corporation merges into a Delaware corporation, the surviving corporation for diversity jurisdiction is a citizen of Delaware."); *Bowers v. Andrew Weir Shipping*, 27 F.3d 800, 806 (2d Cir. 1994) ("A merger of two corporations contemplates that one corporation will be absorbed by the other and will cease to exist while the absorbing corporation remains.") (quotations omitted); Ala. Code § 10-3A-104(b); 8 Del. Code § 259(a). Under both the laws of Alabama and Delaware, AFCSA ceased to exist when it merged with CitiFinancial Corporation 216, LLC, and CitiFinancial Corporation 216, LLC ceased to exist when it

merged with the plaintiff CitiFinancial. *See* Ala. Code § 10-3A-104(b); 8 Del. Code § 259(a).[1] That merger occurred months before the commencement of this action, and as diversity is assessed at the time of commencement, it is evident that CitiFinancial – a Delaware corporation with a principal place of business in Maryland – and Mr. Shell – an Alabama citizen – are diverse. *See Keishian v. Buckley*, 752 F.2d 1513, 1514-15 (11th Cir. 1984); *cf. Harris v. Garner*, 216 F.3d 970, 995 (11th Cir. 2000) (Tjoflat, J., concurring in part and dissenting in part) ("'diversity of citizenship is assessed at the time the action is filed.'") (quoting *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991)).

### B. Standing

The defendant next argues that CitiFinancial lacks standing to bring this action. According to Mr. Shell, the April 1999 arbitration agreement contains no mention of CitiFinancial, and a shareholders report suggests that CitiFinancial obtained no interest in AFSCA until 2000 at the earliest.[2] As CitiFinancial cannot properly be called a party to the arbitration agreement, the petition, according to Mr. Shell, is due to be dismissed.

CitiFinancial argues that it is a proper party because when it merged with CitiFinancial Corporation 216, LLC (which previously merged with AFSCA), it assumed all the rights and liabilities of CitiFinancial Corporation 216, LLC – thereby assuming all the

---

[1] This conclusion forces the axiomatic rejection of the defendant's argument that the action is due to be dismissed because CitiFinancial failed to add AFSCA as an indispensable party pursuant to Rule 19 of the Federal Rules of Civil Procedure. AFSCA no longer existed at the time this action was commenced. The plaintiff was thus unable to join it as a party.

[2] The shareholders report Mr. Shell offers on this point is actually a single page that appears to be taken from a corporate publication issued during 2000 by CitiGroup, on which is mentioned the acquisition of Associates First Capital and its more than 2,600 branches. (Doc. # 5, Ex. D). Whether the evidence competently supports this fact is moot, however, as the plaintiff's argument in opposition tacitly admits as much and requires no proof to the contrary.

rights and liabilities of AFSCA. This is an accurate reflection of the law, and Mr. Shell has again failed to offer the court any authority supporting a contrary position. *See Fyrnetics (H.K.) Ltd. v. Quantum Group, Inc.*, No. 01-1318, 2002 U.S. App. LEXIS 11923, at *13-*14 (7th Cir. June 18, 2002); *Elzinga & Volkers, Inc. v. LSSC Corp.*, 47 F.3d 879, 881 (7th Cir. 1995) (Easterbrook, J.); *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 821 (11th Cir. 1993); *cf. Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 48, 57 (3d Cir. 2001); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 837 F. Supp. 1123, 1125 (N.D. Ala. 1993); *Ex parte Isbell*, 708 So. 2d 571, 576 (Ala. 1997) (discussing *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753 (11th Cir. 1993)). The court therefore finds that CitiFinancial is a proper party to enforce the terms of the arbitration agreement.

C.  **Enforceability of the Arbitration Agreement**

Mr. Shell's final two arguments concede the aforementioned conclusion, but challenge the ability of CitiFinancial to enforce the arbitration agreement against Mr. Shell on the grounds that the agreement is fraudulent on its face, or in the alternative, that CitiFinancial has waived its right to enforce the agreement. As to the former matter, it is well-settled that this court is the proper forum in which to settle this particular dispute. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *Wheat, First Sec.*, 993 F.2d at 818; *J.C. Bradford & Co. v. Vick*, No. 1010280, 2002 Ala. LEXIS 109, at *5 & n.2 (Apr. 12, 2002). And having reviewed the contentions of the parties, the court finds that Mr. Shell has failed to prove that he was fraudulently induced into entering the arbitration agreement.

1.  **Fraudulent Inducement**

Mr. Shell's claim that he was fraudulently induced to enter into the arbitration agreement turns on the following language of the agreement:

> You agree that we do not have to initiate arbitration before exercising our remedies of repossession or non-judicial foreclosure, since we can resort to those remedies without going to court. Any claim or dispute arising out of, relating to, or in connection with our exercise of those remedies, however, would have to be arbitrated.

(Doc. # 5, Ex. C). According to Mr. Shell, this language "clearly states that the reason arbitration is not waived if repossession or non-judicial foreclosure remedies are exercised by the lender is because those remedies can be pursued without the necessity of court involvement." (*Id.*, p. 7). Or in other words, this language "tells the signer that by signing the arbitration agreement, both sides avoid litigation in court . . . ." (*Id.*, pp. 8-9). Mr. Shell then argues that AFSCA and FFFS have regularly resorted to in-court, as opposed to out-of-court, "enforcement of these remedies." (*See id.* at pp. 7-8).[3] The apparent duplicity Mr. Shell would have the court find from these facts is an "intent of the entity making the agreement to force the consumer into arbitration while it intends to pursue actions in state court forums." (*Id.*, p. 9).

This argument is fraught with problems. First, and most notably, the plain language of the agreement says only what it says:

---

[3] Mr. Shell attempts to support this contention through the submission of what he claims are case summary sheets from Alabama court cases to which AFSCA or FFFS are parties. (*See id.*, Ex. K). The court shares the opinion of the plaintiff that this evidence is largely unpersuasive and irrelevant. The court adds that it is largely incomprehensible as well. Assuming, however, that the evidence purports to represent what Mr. Shell claims, he has, for the reasons expressed *infra*, nonetheless failed to establish fraudulent inducement.

8

> You agree that we do not have to initiate arbitration before exercising our remedies of repossession or non-judicial foreclosure, since we can resort to those remedies without going to court. Any claim or dispute arising out of, relating to, or in connection with our exercise of those remedies, however, would have to be arbitrated.

This language does not set forth as a term of the agreement a rule akin to Mr. Shell's offering, "that . . . both sides avoid litigation in court . . . ." *Cf. First Family Fin. Servs. v. Rogers*, 736 So. 2d 553, 558 (Ala. 1999) (describing an arbitration agreement containing language *identical* to that present here as "clear" and "unmistakable" in its terms). Second, the record undisputedly establishes that AFSCA acted in accordance with the above-cited language when it (1) pursued as a remedy non-judicial foreclosure in lieu of arbitration; and (2) when it abandoned its state court action against Mr. Shell and sought to have the counterclaims arbitrated. AFSCA's commencement of litigation against Mr. Shell is in no way prohibited by the above-cited language. Whether it can be characterized as inconsistent with an intent to arbitrate, however, is a matter more relevant to the discussion set forth *infra* section C.2.

More importantly though – for purposes of Mr. Shell's arguments now – is the fact that Mr. Shell has failed to provide any evidence whatsoever of how the aforementioned language fraudulently induced him to enter into the arbitration agreement. "A party must provide evidence of fraud in the inducement, particularly related to the arbitration clause, in order to avoid arbitration." *Capitol Chevrolet & Imports, Inc. v. Grantham*, 784 So. 2d 285, 288 (Ala. 2000). Mr. Shell has come forward with no evidence demonstrating how his understanding of this language affected the decision he made to enter into it. He has come forward with no evidence demonstrating an effort on the part of AFSCA or one of its agents

9

to convince him or mislead him into believing that the language meant what he now claims it to mean. In fact, he has come forward with no evidence demonstrating or even suggesting that he acted with this belief in mind at the time he entered into the arbitration agreement. At best, Mr. Shell has come forward with a rather tortured interpretation of the agreement, and evidence (of a very suspect quality) that AFSCA and FFFS have failed to adhere to that interpretation. This falls far short of meeting the burden he carries here.

### 2. Waiver

Mr. Shell lastly contends that the plaintiff waived its right to enforce the arbitration clause in the present instance, by initiating litigation in Etowah County Circuit Court on November 13, 2001. If such action alone constituted sufficient grounds for a finding of waiver, then this inquiry would be at end. The analysis, however, is slightly more demanding.

> [A]n agreement to arbitrate, just like any other contract . . ., may be waived. In determining whether a party has waived its right to arbitrate, we have established a two-part test. First, we decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and, second, we look to see whether, by doing so, that party has in some way prejudiced the other party.

*Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315-16 (11th Cir. 2002) (citations and quotations omitted); *see also Morewitz v. West of Eng. Ship Owners Mut. Protection & Indem. Ass'n (Lux.)*, 62 F.3d 1356, 1365-66 (11th Cir. 1995). A party that "substantially participates in litigation to a point inconsistent with an intent to arbitrate" can waive its arbitration rights. *Ivax*, 286 F.3d at 1316; *see also Conseco Fin. Corp.-Ala. v. Salter*, No. 1010657, 2002 Ala. LEXIS 210, at *8-*9 (July 3, 2002) ("We will find a waiver of the right to

10

compel arbitration only when the party seeking arbitration has so substantially invoked the litigation process that to compel arbitration will substantially prejudice the party opposing it." (citations and quotations omitted)); *Blue Ribbon Homes Super Ctr., Inc. v. Bell*, No. 1000820, 2001 Ala. LEXIS 414, at *14-*15 (Nov. 9, 2001) (same). Courts should not lightly infer waiver, however, as the party seeking to invoke it bears a heavy burden of proof. *See Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990); *Blue Ribbon Homes*, 2001 Ala. LEXIS 414, at *14; *Ex parte Smith*, 736 So. 2d 604, 610 (Ala. 1999).

The court believes that two separate and independent reasons preclude a finding of waiver in the instant case. First, Mr. Shell has failed to convince the court that he will be prejudiced by having to arbitrate his counterclaims. The only facts Mr. Shell has offered from the record that the court could describe as prejudicial are that Mr. Shell retained an attorney and Mr. Shell and his attorney answered the action commenced by AFSCA. Mr. Shell has submitted no evidence showing or suggesting that he was required to take depositions or respond to any filings by AFSCA or CitiFinancial. Indeed the record evidences no effort on the part of either party (beyond the filing of a complaint and answer) to litigate issues presented by the case. Furthermore, CitiFinancial voluntarily dismissed the action approximately four months after it was filed. The time, costs and efforts expended simply do not support a finding of prejudice. *Cf. S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) ("In this case, S & H waited eight months from the time it filed its complaint to the time it demanded arbitration. During that time, Taft filed two motions – a motion to dismiss and an opposition to S & H's motion for discovery. Additionally, S & H took the depositions of five Taft employees . . . ."); *Stone*, 898 F.2d at

11

1543 ("The use of pre-trial discovery procedures by a party seeking arbitration may sufficiently prejudice the legal position of an opposing party so as to constitute a waiver of the party's right to arbitration."); *see also Snelling & Snelling, Inc. v. Reynolds*, 140 F. Supp. 2d 1314, 1323 (M.D. Fla. 2001) ("A substantial invocation of the litigation process that is combined with *forcing the opposing party to litigant issues in the case* . . . is a sufficient finding of prejudice to constitute a waiver.") (emphasis added); *Frank v. American Gen. Fin.*, 23 F. Supp. 2d 1346, 1350 (S.D. Ala. 1998) ("'Sufficient prejudice to infer waiver [of the right to arbitrate] has been found when a party seeking to compel arbitration engages in discovery procedures not available in arbitration . . . makes motions going to the merits of an adversary's claims . . . or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense.'" (quoting *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993))).

The court also rejects Mr. Shell's contention that he has suffered prejudice by virtue of CitiFinancial's bringing of "this petition in federal court, where it [will] be decided by a body of federal substantive law instead of in state court, where it would be decided under the case law of Alabama." (Doc. # 5, p. 11). It is true that the FAA "is something of an anomaly in the field of federal-court jurisdiction . . . creat[ing] a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate . . ." without any corresponding grant of jurisdiction. *Moses H. Cone*, 460 U.S. at 26. The law is clear, however, that courts interpreting arbitration agreements "generally . . . apply ordinary state-law principles that govern the formation of contracts." *First Options v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Perez v. Globe Airport Sec. Servs.*, 253 F.3d 1280, 1285 (11th Cir. 2001), *vacated by* No. 00-13489, 2002 U.S. App. LEXIS 12334 (11th Cir. Mar. 22, 2002); *Paladino v.*

*Avnet Computer Techs.*, 134 F.3d 1054, 1061 (11th Cir. 1998) (Cox, J., concurring).[4] Furthermore, Mr. Shell's argument ignores one of the bedrock principles of modern jurisprudence:

> [I]n all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.

*Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945). Suffice it is to say, the court finds that Mr. Shell has failed to prove that he has suffered prejudice.

The court also believes that the plaintiff's actions in this case do not rise to such a level that would warrant a finding that it acted inconsistently with its right to arbitrate. The court recognizes that the plaintiff commenced a lawsuit and that Mr. Shell answered that lawsuit. But that is all that transpired. In contradistinction to these facts are the relatively swift withdrawal of the state court action by CitiFinancial following assumption of AFSCA's assets and liabilities (by virtue of its merger with CitiFinancial Corporation 216, LLC); the limited progress of the action, as well as costs and efforts expended; the plaintiff's contention that the action it filed involved claims that were not arbitrable; and the recognition of the action by Alabama courts – brought pursuant to Ala. Code § 6-6-280 – as

---

[4] In *First Options*, the Supreme Court noted that the general rule described *supra* is qualified by the following exception not applicable here:

> Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so. In this manner the law treats silence or ambiguity about the question *who* (primarily) should decide arbitrability differently from the way it treats silence or ambiguity about the question *whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement – for in respect to this latter question the law reverses the presumption.

*First Options*, 514 U.S. at 944-45 (citations and quotations omitted, emphasis in original).

"an efficient means for the adjudication of the right to possession . . . [and] as a favored action for the trial of the legal title to land . . . ." *MacMillan Bloedell, Inc. v. Ezell*, 475 So. 2d 493, 497 (Ala. 1985).

The court notes that it is not entirely convinced that the plaintiff could not have submitted the merits of its state court action to an arbitrator. The pertinent language quoted by the plaintiff as creating a bar to arbitration in cases of repossession strongly lends itself – as Mr. Shell recognizes – to an interpretation that the remedy of repossession referred to is of the non-judicial sort. But insofar as the court must look at the totality of the circumstances in determining whether a party has substantially invoked the litigation process, the court finds that – these concerns notwithstanding – the plaintiff did not substantially invoke the litigation process prior to seeking arbitration.

Compelling here is the case of *Benoay v. Prudential-Bache Securities, Inc.*, 805 F.2d 1437 (11th Cir. 1986). In that case, the Eleventh Circuit considered questions concerning whether parties had waived any right to arbitrate by failing to request such action for approximately two and one-half years after litigation had commenced and judicial discovery had been taken. Of critical importance was the fact that at the time of the underlying action, the law of the Eleventh Circuit prohibited arbitration of otherwise arbitrable state claims when arbitrable and nonarbitrable claims were inextricably intertwined. *See id.* at 1439-40.

In finding that the rights to arbitration had not been waived, the circuit court stated that "when a claim is not arbitrable at the time an action is commenced and a timely request has been made, mere participation in discovery does not cause prejudice sufficient to constitute a waiver." *Id.* at 1440. The right of the parties to arbitrate had not accrued, the

court continued, until the Supreme Court held contrary to circuit precedent. The parties thereafter exercised the right to arbitration approximately 10 weeks after the accrual of said right. No discovery took place during that time. A finding of waiver, therefore, was inappropriate. *See id.*

In the instant case, CitiFinancial's right to arbitrate technically did not accrue until it merged with CitiFinancial Corporation 216, LLC. The court recognizes that CitiFinancial's assumption of AFSCA's rights and liabilities presumably included any liability incurred by AFSCA acting in a manner inconsistent with the right to arbitrate. But as noted *supra*, this court is to look at the totality of circumstances in determining whether a party acted inconsistently with the right to arbitrate. And in the course of such an examination, the court cannot help but countenance the fact that while AFSCA might have acted in a manner inconsistent with the right to arbitrate, its successor – CitiFinancial – most certainly did not. In light of the foregoing, the court also finds that CitiFinancial did not sufficiently invoke the litigation process in such a way as to act inconsistently with its right to arbitrate.

### V. Conclusion

The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this 31st of July, 2002.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE